# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

DWIGHT L.,[1]

        Plaintiff,

    v.

MARTIN J. O'MALLEY,[2]
Commissioner of the Social Security
Administration,

        Defendant.

No. 3:23-cv-00189-KFR

## DECISION AND ORDER

On or about August 30, 2018, Dwight L. ("Plaintiff") protectively filed an application under Title II of the Social Security Act,[3] with an alleged onset date of May 20, 2010.[4] Plaintiff has exhausted his administrative remedies and filed a Complaint seeking relief from

---

[1] Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Martin J. O'Malley is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 U.S.C. 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

[3] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Plaintiff brought a claim under Title II only. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI). For convenience, the Court may cite the regulations governing disability determinations under either title.

[4] Administrative Record ("A.R.") A.R. 264–65, 1200. The application summary, not the application itself, appears in the Court's record and is dated November 5, 2018. A.R. 264. Pursuant to 20 C.F.R. §§ 416.340-350, a protective filing date establishes the earliest possible application date based on a claimant's oral inquiry about eligibility or a verbal or written statement of intent to file for benefits. Therefore, August 30, 2018, is considered Plaintiff's application filing date. *See* A.R. 1200.

this Court.[5]  Plaintiff's Opening Brief asks the Court to reverse and remand the agency's decision for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).[6]  The Commissioner filed the Administrative Record as his Answer and a Response Brief.[7]  Plaintiff filed a Reply Brief.[8]

Oral argument was not requested and was not necessary to the Court's decision.  This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[9]  For the reasons stated below, Plaintiff's request for relief at Docket 8 is DENIED.

## I.  STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based upon legal error.[10]  "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[11]  Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[12]  In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[13]  If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[14]  A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which

---

[5] Docket 1 (Plaintiff's Compl.).

[6] Docket 8 (Mtn. to Remand), Docket 9 (Plaintiff's Brief).

[7] Docket 7 (Notice of Lodging Admin. Record); Docket 11 (Commissioner's Br.).  As of December 1, 2022, the Commissioner's "answer may be limited to a certified copy of the administrative record." *See* Fed. R. Civ. P., Supp. R. 4(b) of Soc. Sec. Actions under 42 U.S.C. § 405(g) (effective Dec. 1, 2022).

[8] Docket 12 (Reply).

[9] 42 U.S.C. § 405(g).

[10] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[11] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

[12] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[13] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[14] *Ford v. Saul,* 950 F.3d 1141, 1154 (9th Cir. 2020) (citation, alteration, and internal quotation marks omitted).

[s]he did not rely."[15]  An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."[16]  Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[17]  In particular, the Ninth Circuit has found that the ALJ's duty to develop the record increases when the claimant is unrepresented or is mentally ill and thus unable to protect his own interests.[18]  However, this duty exists "even when the claimant is represented by counsel."[19]

## II. DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance benefits ("DIB") to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[20]  In addition, Supplemental Security Income ("SSI") may be available to individuals who do not have insured status under the Act but who are age 65 or older, blind, or disabled.[21]  Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[22]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the

---

[15] *Garrison v. Colvin,* 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).
[16] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citations omitted).
[17] *Celaya v. Halter,* 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)).
[18] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted).
[19] *Mayes v. Massanari,* 276 F.3d 453, 459 (9th Cir. 2001) (citations omitted).
[20] 42 U.S.C. § 423(a).
[21] 42 U.S.C. § 1381a.
[22] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

*Dwight L. v. O'Malley*
3:23-cv-00189-KFR

3

Case 3:23-cv-00189-KFR   Document 16   Filed 09/12/24   Page 3 of 21

national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[23]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[24]  In this sequential disability analysis, a claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[25]  If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[26]  The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[27]  The steps, and the ALJ's findings in this case (in italics), are as follows:

**Step 1.**  Determine whether the claimant is involved in "substantial gainful activity" ("SGA").[28]  *The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019.  The ALJ then determined that Plaintiff had engaged in substantial activity from January 2010 through December 2014. Therefore, the period at issue is January 2015 through the date last insured of December 31, 2019.[29]*

**Step 2.**  Determine whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience.  The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[30]  *The ALJ determined that Plaintiff had the following severe impairment: thoracic spine disorder.  The ALJ determined that Plaintiff's obstructive sleep apnea, right shoulder pain, mild right hip pain, hypertension, hyperlipidemia, gastroesophageal reflux disease, insomnia, kidney stones, mild hearing loss, and post-traumatic stress disorder (PTSD) were non-severe impairments.[31]*

---

[23] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).
[24] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).
[25] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); see also *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).
[26] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098.
[27] *Tackett*, 180 F.3d at 1101 (emphasis in original).
[28] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).
[29] A.R. 1203.
[30] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).
[31] A.R. 1203–04.

**Step 3.** Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity. If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.[32] *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.[33]*

<u>Residual Functional Capacity.</u> Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.[34] Once determined, the RFC is used at both step four and step five. An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from his impairments, including impairments that are not severe.[35] *The ALJ determined that Plaintiff had the residual functional capacity to perform light work with the following limitations: frequent kneeling, crouching, crawling, and climbing stairs and ramps; occasional stooping and climbing ladders, ropes, or scaffolds; avoiding moderate exposure to excessive industrial levels of vibration; no contact with the general public (however, incidental contact is allowed); and occasional superficial contact with coworkers.[36]*

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do his past relevant work, the claimant is deemed not to be disabled.[37] Otherwise, the evaluation process moves to the fifth and final step.[38] *The ALJ determined that Plaintiff was unable to perform any past relevant work.[39]*

**Step 5.** Determine whether the claimant is able to perform other work in the national

---

[32] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).
[33] A.R. 1205.
[34] 20 C.F.R. §§ 404.1545(a), 416.945(a).
[35] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).
[36] A.R. 1205.
[37] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).
[38] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).
[39] A.R. 1210.

economy in view of his age, education, and work experience, and in light of the RFC. If so, the claimant is not disabled. If not, the claimant is considered disabled.[40] *The ALJ determined that through the date last insured, there were jobs that existed in significant numbers in the national economy that the claimant could have performed, including small products assembler I (light; unskilled SVP 2); cleaner, housekeeping (light; unskilled SVP 2); and agricultural produce sorter (light; unskilled SVP 2).*[41]

The ALJ concluded that Plaintiff was not disabled at any time from May 20, 2010, the alleged onset date, through December 31, 2019, the date of the ALJ's decision.[42]

## III. PROCEDURAL BACKGROUND

Plaintiff was considered a "younger person" (age 18-49) on the alleged onset date and changed age categories to "closely approaching advanced age" (age 50-54) as of the date last insured.[43] His past relevant work included work as a recruit instructor, demolition specialist, labor gang supervisor, and a blaster.[44]

Plaintiff alleged disability due to low back and mid back, shoulder, right hip, right ankle, and whole right side of body pain. He also alleged disability due to PTSD.[45] His claims were denied at the initial level on August 30, 2019.[46] On October 26, 2020, he appeared and testified telephonically with representation before the assigned ALJ.[47] On November 20, 2020, the ALJ issued an unfavorable ruling.[48] On March 15, 2021, the Appeals Council denied Plaintiff's request for review.[49] The parties stipulated to and this Court ordered remand for further proceedings.[50] On April 16, 2022, the Appeals Council vacated the Commissioner's final decision and directed the ALJ to: (1) reconsider the opinions of Ron Feigin, M.D., and Daniel

---

[40] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).
[41] A.R. 1211–12.
[42] A.R. 1212.
[43] A.R. 1211. *See* 20 C.F.R. §§ 404.1563, 416.963.
[44] A.R. 1211.
[45] A.R. 305.
[46] A.R. 105.
[47] A.R. 68–79. The ALJ notified Plaintiff that she was conducting the hearing via telephone "due to community measures to stop the spread of the virus, COVID-19." A.R. 48.
[48] A.R. 30–39.
[49] A.R. 1–6.
[50] A.R. 1299.

Gonzales, Ph.D.; (2) reconsider the April 17, 2017 Compensation and Pension Examination report; and (3) consider the lay witness evidence from Michael Colvin. The Appeals Council also ordered the ALJ to give further consideration to Plaintiff's RFC; reevaluate Plaintiff's alleged symptoms; obtain supplemental evidence from a vocational expert; provide Plaintiff with the opportunity for a new hearing; address the evidence submitted to the Appeals Council; and take any further action needed to complete the administrative record and issue a decision.[51]

On February 13, 2023, Plaintiff appeared and testified by video with representation before the same ALJ, at a hearing after remand.[52] On April 25, 2023, the ALJ issued a second unfavorable ruling.[53] In her second ruling, the ALJ discounted medical opinions she had credited in her original denial, and relied on the opinion of an agency reviewing physician over the opinions of Plaintiff's treating sources and the testifying medical expert. The ALJ concluded that the reviewing physician's opinion was consistent with the entirety of the record, including the treatment evidence, objective findings, and Plaintiff's activities of daily living.[54] The ALJ also found that Plaintiff's mental limitations were not so severe to warrant a disability finding.

On August 23, 2023, Plaintiff timely appealed to this Court.[55]

## IV. DISCUSSION

Plaintiff is represented by counsel in this appeal. Plaintiff alleges that the ALJ: (1) violated Plaintiff's right to due process by failing to explain the basis for changing "significant findings between November 2020 and February 2023"; (2) erroneously relied on an "outdated opinion by a non-examining psychiatrist" to reject the medical opinions of Plaintiff's treating physician and testifying medical expert regarding Plaintiff's physical limitations; and (3) failed to adopt the mental limitations the ALJ found credible or explain why these limitations were omitted from the RFC.[56] The Commissioner disagrees and asks the Court to affirm the ALJ's

---

[51] A.R. 1302–04.
[52] A.R. 1227–42.
[53] A.R. 1200–13.
[54] A.R. 1208.
[55] *See* Docket 1.
[56] Docket 9 at 3–16.

decision.[57]

### A. Due Process

Plaintiff asserts that his due process rights were violated by the ALJ. He alleges that, despite considering the same evidence, the ALJ made findings in the second unfavorable decision contradicting her first decision and failed to explain her reasoning for the change, thereby violating Plaintiff's right to due process.[58] The Commissioner counters that, although Plaintiff "claims more broadly that the ALJ's deviation from the prior decision deprived him of his due process," Plaintiff also admits that the ALJ is not bound by prior findings and must determine all factual decisions *de novo*. The Commissioner asserts that the ALJ "in fact provided good reasons [in the second unfavorable decision] for assessing the medical opinions as she did[.]"[59]

Plaintiff alleges the ALJ's "changed findings" in the 2023 decision regarding the opinions of Daniel Gonzales, Ph.D. and Robert Thompson, M.D., violated his right to due process because the changes were made "with no explanation and no support."[60] This argument is without merit. "A mere allegation of a due process violation is not a colorable constitutional claim. Rather, the claim must be supported by facts sufficient to state a violation of substantive or procedural due process."[61] Plaintiff has not met this standard.

Here, the ALJ accepted evidence submitted by Plaintiff, conducted a new hearing, took new vocational expert testimony, and issued a new decision.[62] No discussion of the ALJ's prior findings or the reason for any variance from those findings was required. As Plaintiff states in his own brief, the ALJ "was not bound by her prior findings or decision."[63] Furthermore, the social security regulations provide that the ALJ's remand procedures will vary depending on

---

[57] Docket 11 at 2–9.
[58] Docket 9 at 5–9, Docket 12 at 2.
[59] Docket 11 at 4.
[60] Docket 9 at 9.
[61] *Klemm v. Astrue,* 543 F.3d 1139, 1144 (9th Cir. 2008) (internal quotations and citations omitted).
[62] A.R. 1200–01; 1223–63.
[63] Docket 9 at 4. Plaintiff cites the Hearings, Appeals and Litigation Law Manual for the Social Security Administration, which states: "If the Appeals Council [ ] remands a case to the hearing level after a court remand, it generally vacates the entire administrative law judge (ALJ) decision, and the ALJ must consider all pertinent issues *de novo*." (HALLEX) I-2-8-18(A) (S.S.A.), 1993 WL 643058, at * 1.

the instructions of the Appeals Council.[64]  And in this case, on remand, the Appeals Council vacated the ALJ's 2020 decision and specifically ordered the ALJ to "[g]ive further consideration" to Plaintiff's RFC, including the medical opinions and prior administrative medical findings.[65]  Given these facts, Plaintiff has not stated a colorable due process violation.

## B . Medical Opinion Evidence

Plaintiff alleges that the ALJ erred by relying on the opinion of David R. Mack, M.D., instead of the opinions of Plaintiff's treating sources, Jon Hinman, M.D., and Jacob Pollard, D.P.T.,[66] and the opinion of testifying medical expert, Robert Thompson, M.D.[67]  The Commissioner argues there was no error because "[t]he ALJ rationally assessed the persuasiveness of the medical opinions based on their supportability and consistency with the record."[68]

### 1. *Legal Standards*

Under the revised regulations in effect March 27, 2017, the definition of what constitutes a medical opinion has been narrowed, focusing on what the claimant can do despite his impairments and what work-related limitations are present.[69]  The revised regulations define a medical opinion as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:
>
> > (i)     Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as

---

[64] *See* 20 C.F.R. §416.1477 (An ALJ must "take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order.").

[65] A.R. 1303.

[66] DPT Pollard did not provide a separate medical opinion.  In the physical therapy treatment note from May 8, 2020, DPT Pollard noted that Plaintiff "was run through a number of tests today involving lifting, walking and other functional movements (see attached residual functional capacity assessment for details)."  He also noted that he had passed the assessment to Dr. Hinman "in order for him to continue to fill out and finalize."  A.R. 1508.

[67] Docket 9 at 9–13.

[68] Docket 11 at 2.

[69] *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1513(a)(2).  Because Plaintiff protectively filed his application on or about August 30, 2018, the revised regulations governing the evaluation of medical evidence are applicable here.

reaching, handling, stooping, or crouching);

(ii)    Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii)    Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv)    Your ability to adapt to environmental conditions, such as temperature or fumes.[70]

The revised regulations further provide that the ALJ no longer gives any particular weight to a medical opinion based on its source, thereby eliminating the treating source rule.[71] Instead, the ALJ considers the persuasiveness of a medical opinion based on five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length, extent, and type of treatment; (4) specialization; and (5) other relevant factors that support or contradict the medical opinion.[72]

Supportability and consistency are considered the most important factors for evaluating persuasiveness.[73] Supportability and consistency are explained as follows in the regulations:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[74]

Generally, these are the only two factors the ALJ is required to address in her decision.[75]

---

[70] 20 C.F.R. § 404.1513(a)(2).
[71] *Revisions to Rules Regarding the Evaluation of Medical Evidence,* 82 Fed. Reg. 5844-01 (Jan. 18, 2017), 2017 WL 168819, at *5867–68; 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (for claims filed on or after March 27, 2017).
[72] 20 C.F.R. §§ 404.1520c(c), 416.920c(c).
[73] The regulations state, "The factors of supportability . . . and consistency . . . are the most important factors [the SSA] consider[s] when [the SSA] determine[s] how persuasive [the SSA] find[s] a medical source's medical opinions or prior administrative medical findings to be." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (for claims filed on or after March 27, 2017).
[74] 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).
[75] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) ("[W]e will explain how we considered the

However, when two or more medical opinions or prior administrative medical findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how "the other most persuasive factors" were considered.[76] In the Ninth Circuit, the current regulatory framework no longer requires ALJs to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining medical source's opinion.[77] However, an ALJ is still required to provide an explanation supported by substantial evidence for rejecting an examining or treating physician's opinion as unsupported or inconsistent. [78]

This Court is confined to reviewing the reasons the ALJ asserts.[79] An ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings.[80] The consistency of a medical opinion with the treatment notes is a relevant factor in the ALJ's evaluation of that opinion.[81] However, an ALJ may not "cherry pick" evidence to discount a medical opinion.[82]

2. *Medical Opinion of David Mack, M.D.*

On August 30, 2019, David Mack, M.D., an agency reviewing physician, opined that Plaintiff could perform light work with the following limitations: frequent kneeling, crouching, crawling, and climbing ramps or stairs; occasional stooping and climbing ladders, ropes, or scaffolds; and avoiding moderate exposure to vibration. Dr. Mack provided a review of

_____

supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.").

[76] 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (for claims filed on or after March 27, 2017).

[77] Woods *v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. . . Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, . . .is likewise incompatible with the revised regulations.") (internal citations and quotations omitted).

[78] *Id.*

[79] *Brown-Hunter*, 806 F.3d at 494 ("As we have long held, we are constrained to review the reasons the ALJ asserts.") (quotation, citation, and emphasis omitted).

[80] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

[81] *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007).

[82] *Ghanim*, 763 F.3d at 1164.

1    Plaintiff's records through July 30, 2019.[83]

2         First, Plaintiff asserts that the ALJ should not have found Dr. Mack's opinions

3    persuasive because Dr. Mack was a psychiatrist, "not a specialist in treating or evaluating

4    physical impairments."[84]  The new regulations provide that the opinion of "a medical source

5    who has received advanced education and training to become a specialist may be more

6    persuasive about medical issues related to his or her area of specialty" than that of a source

7    who is not a specialist in this area."[85]  However, the most important factors for the ALJ to

8    consider, and the factors she must explain in the decision, are the supportability and

9    consistency of the medical opinion.[86]

10        Here, the ALJ found Dr. Mack's opinion persuasive regarding Plaintiff's physical

11   impairments/functioning.  The ALJ adequately explained the supportability and consistency

12   factors.  She reasoned that the opinion was "supported by a thorough review of the record,

13   medical expertise, and familiarity with the Social Security regulations."  The ALJ concluded

14   that the opinion was consistent with the treatment evidence, objective findings, and Plaintiff's

15   activities of daily living, including household chores, home maintenance, wood carving,

16   photography, taking long drives, taking short walks, and shopping.[87]

17        In explaining her decision, the ALJ provided specific citations from the treatment

18   record and Plaintiff's imaging results.  For example, on April 21, 2011, after his T12 fracture

19   and prior to his vertebroplasty surgery, Plaintiff's physical examination was normal with a

20   normal gait and the ability to stand without difficulty.  The provider indicated that Plaintiff's

21   PET/CT from March 23, 2011 "revealed [a] healing T12 vertebral body compression fracture

22   with 50–75% loss of height anteriorly" and suggested some residual inflammation.[88]   On

23   _____

24   [83] A.R. 98–101.
     [84] Docket 9 at 10.

25   [85] 20 C.F.R. §§ 404.1520c(c)(4), 416.920c(c)(4)
     [86] 20 C.F.R. §§ 404.1520c(b)(2), 416.902c(b)(2).  *See Donald A. v. Comm'r of Soc. Sec.,* No. 2:23-CV-361-

26   DWC, 2023 WL 7126578, at *5 (Oct. 30, 2023) ("Although a medical source's specialization is a
     relevant factor to the persuasiveness of their opinion, the supportability and consistency of the opinion

27   remain the most important factors for the ALJ to consider, as well as the factors they must explain in
     their decision.").
     [87] A.R. 1208.

28   [88] A.R. 1126–27.

January 5, 2012, Plaintiff reported a 75% improvement in his back pain after vertebroplasty surgery on November 10, 2011. He reported continued residual pain. At the same time, Plaintiff expressed a desire to increase his activity level and to begin physical therapy.[89] In a treatment note from March 15, 2016, Plaintiff reported lower thoracic, lumbar, and left and right sacroiliac pain since 2010. He indicated that bending, jumping, lifting, sitting, standing, sleeping, and twisting aggravated his condition, but that he had not been receiving treatment. The provider's recommended treatment was to apply a hot, moist pack to the full spine region.[90] The ALJ also cited to x-rays of the lumbar spine and x-rays and an MRI of the thoracic spine from October 18, 2017.[91] This imaging showed a treated T12 fracture and mild degenerative changes in the lumbar and thoracic spine, but no stenosis or acute abnormality.[92]

The ALJ also cited to specific records regarding Plaintiff's activities of daily living. For example, in April 2017, Plaintiff reported hunting, fishing, berry picking, chopping wood, and making birchbark crafts when not working.[93] At a physical therapy appointment on May 1, 2019,[94] Plaintiff reported feeling sore from doing garden work, and reports from Plaintiff's physical therapists through that month stated that Plaintiff was improving his function and strength and experienced less pain.[95] In June 2019, Plaintiff reported pain in his legs after admitting a "high activity level since being busy around his yard and doing projects for his business the last few weeks."[96] In July 2019, during a mental status examination with Daniel Gonzales, Ph.D., he reported doing home maintenance, photography, and wood carving; taking long drives and short walks; and shopping, fishing, and hunting.[97] The ALJ also pointed to a treatment record after the disability period, in May 2020. In this record, Plaintiff reported that he was unable to work around his home or carry firewood for more than one hour before

---

[89] A.R. 1088–89.
[90] A.R. 456–58.
[91] A.R. 1206–07.
[92] See A.R. 690–95.
[93] A.R. 483.

[95] A.R. 1515–18.
[96] A.R. 1512.
[97] A.R. 720.

Decision and Order
*Dwight L. v. O'Malley*
Case 3:23-cv-00189-KFR     Document 16     Filed 09/12/24     Page 13 of 21
13

pain stopped him.[98]

Next, Plaintiff asserts that Dr. Mack's opinion was outdated and based on only limited evidence.[99] The Commissioner counters that Plaintiff offers reasons he would find Dr. Mack's opinion unpersuasive, but he does not allege that the evidence the ALJ relied on to evaluate Dr. Mack's opinion was insufficient.[100]

Dr. Mack rendered his opinion on August 30, 2019, only four months prior to the date last insured of December 31, 2019.[101] During that four-month period, there do not appear to be any x-rays, MRIs, or other objective findings in the record.[102] Moreover, the Court's review of the few records from the period between Dr. Mack's opinion and the date last insured do not undermine the ALJ's decision.[103] For example, the ALJ cited to an appointment on November 22, 2019, wherein Plaintiff reported increased soreness due to "dampness" and his activities, and the provider observed a limp. However, the provider also noted that Plaintiff reported his medication regimen was effective and that he had been taking a lower dose since returning from traveling.[104]

In sum, the ALJ adequately addressed the supportability and consistency of Dr. Mack's medical opinion. The ALJ's determination that Dr. Mack's opinion is persuasive is supported by substantial evidence.

### 3. *Medical Opinion of Jon Hinman, M.D.*

On May 8, 2020, Jon Hinman, M.D., provided a physical RFC assessment. He opined that Plaintiff could sit for less than two hours and stand or walk for two hours in an eight-hour

---

[98] A.R. 1508.
[99] Docket 9 at 12–13.
[100] Docket 11 at 5.
[101] A.R. 98–101.
[102] Shortly after the date last insured, in March 2020, the x-ray of Plaintiff's lumbar spine taken showed mild degenerative disc disease at L3-4 and L4-5 and the x-ray of the right hip showed mild osteoarthritis. A.R. 776, 779. However, the ALJ clarified at the outset of the decision that "the period at issue for this decision is January 2015 through the date last insured, December 31, 2019." A.R. 1203.
[103] *See Hardin v. Kijakazi,* No. 22-16517, 2023 WL 6567890, at *1 (Oct. 10, 2023) ("An expert's opinion is not automatically rendered unreliable if it does not account for every procedure that a claimant has undergone before the date of his hearing.").
[104] A.R. 805–08.

workday.[105]  Dr. Hinman stated that Plaintiff benefitted from back surgery in 2011, but was experiencing "worsening, debilitating pain as assessed in his Physical Residual Functional Capacity Assessment," which was performed by DPT Pollard.[106]

The ALJ found Dr. Hinman's opinion unpersuasive, particularly regarding Plaintiff's sitting, standing, and walking limitations.  She determined that the record consistently documented intact neurologic examinations and "rather marginal post-operative findings, which were nevertheless controlled with pain medications."  She concluded that Plaintiff's reported activities, including home maintenance, wood carving, photography, taking long drives and short walks, and shopping, were inconsistent with Dr. Hinman's sitting, standing, and walking limitations.[107]

Plaintiff asserts that the ALJ's finding that Dr. Hinman's sitting, standing, and walking limitation opinion was inconsistent with the objective findings of record because it "ignored evidence of lumbar tenderness and pain on range of motion testing, limited range of motion of the right hip, limited range of motion of the right shoulder, abnormal sensation in the L3/L4 and L5 distributions, an antalgic gait, and lumbar muscle spasms."[108]  In her review of the medical opinion evidence, the ALJ acknowledged that the examination findings noted "plausible findings of decreased range of motion, tenderness, pain, and some findings of antalgic gait[.]"  However, she weighed more heavily the findings of "normal strength and sensation and pain control with medications."[109]  The Court's review of the specific treatment records cited by Plaintiff also reveals reports of adequate pain control with medications, normal posture, and five out of five bilateral lower extremity strength.[110]  Further, the ALJ noted that

---

[105] A.R. 1163.
[106] A.R. 1166.
[107] A.R. 1209.
[108] Docket 9 at 12.
[109] A.R. 1209.  The ALJ did not discuss these examination findings specifically in reference to Dr. Hinman's opinion, but in reference to Dr. Thompson's less restrictive sitting, standing, and walking limitations.
[110] See e.g., A.R. 637 (paraspinal spasms, tenderness with normal gait and station and normal posture), 640–42 (lumbar pain on examination; reported medication regime was effective), 725–28 (antalgic gait with 5/5 strength in the bilateral extremities; reported medication regime was effective and helped with everyday pain and takes as needed depending on activity; planning a six-week trip to Italy), 730–32

Plaintiff's daily activities involved a level of exertion inconsistent with Dr. Hinman's limitation of sitting less than two hours and standing/walking about two hours, which is also a legitimate reason for rejecting the opinion. [111]

In sum, the ALJ provided sufficient reasons supported by substantial evidence for discounting Dr. Hinman's medical opinion.

### 4. *Robert Thompson, M.D.*

On October 26, 2020, Robert Thompson, M.D., testified as a medical expert regarding Plaintiff's physical impairments and limitations. He opined that Plaintiff could lift and carry 10 pounds frequently and up to 20 pounds occasionally; sit for two hours at one time for a total of six hours in an eight hour workday and stand/walk for one hour at a time for a total of six hours in an eight hour workday; occasionally operate foot controls, climb ramps and stairs, stoop, and kneel; and should not climb ladders, ropes, or scaffolds, crouch, or crawl. Dr. Thompson also opined that Plaintiff should not work at unprotected heights, with moving mechanical parts, or with heavy industrial vibrations. [112]

Before remand, the Appeals Council determined that the ALJ's decision "contain[ed] an inadequate evaluation of the opinion evidence." [113] The Council specifically required the ALJ to further consider certain medical opinions and lay witness statements, but it did not require reconsideration of Dr. Thompson's opinion. [114] However, the Appeals Council also instructed the ALJ to further consider Plaintiff's RFC by re-evaluating "*the medical source opinions*

---

(antalgic gait with normal posture and 5/5 strength in the bilateral extremities; reported medical regime of tramadol for pain), 735–39 (antalgic gait with normal posture; reported feeling good using TENS unit and attending physical therapy), 741–43 (50-60% improvement in pain after L1/2 epidural steroid injection, but reported pain after yard work), 749–52 (antalgic gait with 5/5 strength in the lower extremities and normal posture; paravertebral myofascial tenderness and spasm; reported medication regime was effective), 796–97 (lumbar and right hip pain on examination with antalgic gait; reported medication regime was adequate most days with occasional breakthrough pain), 800–803 (antalgic gait with normal posture; reported his medication regime was adequate on most days with occasional breakthrough pain), 805–07 (antalgic gait with 5/5 bilateral lower and upper extremities; reported that medications and monitoring his activities keeps pain controlled and tramadol was effective for pain), 1190–94 (normal posture with 5/5 strength in bilateral lower extremities; right hip pain; reported pain medication adequate).

[111] *Ford v. Saul,* 950 F.3d 1141, 1155 (9th Cir. 2020).
[112] A.R. 63–64.
[113] A.R. 1302.
[114] A.R. 1302–03.

*and prior administrative medical findings*" pursuant to the regulations in effect after March 27, 2017.[115]  These instructions indicate that the ALJ could re-evaluate Dr. Thompson's opinion in the 2023 decision.

Plaintiff asserts that the Court should remand for further proceedings because the ALJ took the same objective findings and activities she cited in the 2020 decision as supporting Dr. Thompson's opinion to then find his opinion unpersuasive in the 2023 decision without explaining or supporting this change.[116]

In the previous 2020 decision, the ALJ stated:

> Dr. Thompson's well-reasoned opinion is supported by the examination findings throughout the record, which are devoid of gross physical dysfunction noting plausible findings of decreased range of motion, tenderness, pain, and some findings of antalgic gait, but normal strength and sensation and pain control with medications.  Dr. Thompson also noted the claimant's . . . physical activities during the period under review including cutting wood, which are inconsistent with the alleged loss of functioning.[117]

In the 2023 decision, the ALJ found Dr. Thompson's opinion unpersuasive, reasoning that it was not consistent with the objective findings or Plaintiff's reported daily activities.  The ALJ again noted that Plaintiff's treatment records were "devoid of gross physical dysfunction."[118]  Specifically, the ALJ acknowledged that the examination findings showed decreased range of motion, tenderness, pain, and some findings of an antalgic gait, but these same findings also showed normal strength and sensation and pain control with medications.  She again points out that Dr. Thompson noted that Plaintiff's daily activities, including cutting wood, were inconsistent with Plaintiff's alleged loss of functioning.[119]

Although the ALJ does not explicitly explain why the objective evidence and Plaintiff's physical activities, which supported Dr. Thompson's opinion in 2020, now cut against the same opinion in 2023, as explained above, given the *de novo* review conducted by the ALJ following

---

[115] A.R. 1303 (emphasis added).
[116] Docket 9 at 11.
[117] A.R. 37.
[118] A.R. 1209.
[119] A.R. 1209.

remand, she did not need to.[120] The ALJ adequately explained her rationale for omitting some of Dr. Thompson's limitations, stating "[w]hile the claimant undoubtedly continues to have difficulties with thoracic back pain, he is likely at most precluded from heavier and strenuous work activities and prolonged standing and walking."[121] Objective evidence in the record and Plaintiff's contradictory activities support the ALJ's decision. And, as detailed above, the ALJ's reliance on a medical opinion other than Dr. Thompson's was supported by substantial evidence. The Court cannot conclude based on the record before it that the ALJ erred when she discounted Dr. Thompson's opinion in her 2023 decision.

### C. Mental Limitations and the RFC

Plaintiff asserts that the ALJ failed to either include the mental limitations she found credible in the RFC or explain her reasoning for omitting the limitations.[122] Specifically, Plaintiff alleges that the ALJ found mild mental functional limitations in all four areas of mental functioning, yet erroneously included only a limitation of "no contact with the general public (however, incidental contact is allowed) [and] occasional superficial contact with coworkers."[123]

At step two in the sequential disability analysis, the ALJ assesses and summarizes on the Psychiatric Review Technique Form (PRTF) "an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings."[124] The ALJ "evaluate[s] the effects of [ ] mental disorder[s] on each of the four areas of mental functioning based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation."[125] Under the regulations, a "mild limitation" means that a claimant's independent, appropriate, and effective functioning

---

[120] HALLEX I-2-8-18(A) (S.S.A.), 1993 WL 643058, at * 1 ("If the Appeals Council [] remands a case to the hearing level after a court remand, it generally vacates the entire administrative law judge (ALJ) decision, and the ALJ must consider all pertinent issues *de novo*.").
[121] A.R. 1207.
[122] Docket 9 at 13.
[123] A.R. 1205.
[124] SSR 96-8p, ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 1996 WL 374184, at *4 (July 2, 1996). *See Bray v Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1224 (9th Cir. 2009) ("SSRs do not carry the 'force of law,' but they are binding on ALJs nonetheless.").
[125] 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(F)(2).

is "slightly limited."[126]  In formulating the RFC, the ALJ is required to consider the limiting effects of all impairments, including those which are non-severe.[127]  The ALJ's analysis of the claimant's mental impairments requires a "more detailed assessment" than required for the step two, paragraph B analysis.[128]  In recent decisions, district courts in the Ninth Circuit have held that it is not enough for the ALJ to state that the RFC reflects the degree of limitation found in the paragraph B mental functioning analysis.[129]

Here, the ALJ determined that Plaintiff's mental impairments were non-severe.  In the paragraph B analysis, the ALJ found that Plaintiff had a mild functional limitation in all four of the broad functional areas.[130]  At step two and as part of the RFC analysis, the ALJ cited to Plaintiff's mental status examinations during the relevant period indicating a normal mood and affect; alertness and orientation to person, place, and time; appropriate speech and thought content; and normal cognition, memory, concentration, and judgment.[131]  As part of the RFC analysis, the ALJ evaluated the medical opinion evidence regarding Plaintiff's mental

---

[126] 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(b).

[127] *See* 20 C.F.R. § 404.1545(a)(2), (e).

[128] SSR 96-8p, 1996 WL 374184, at *4 ("The mental RFC assessment used at steps four and five of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in [paragraph B] of the adult mental disorders listings . . .").

[129] *E.g., Victor R. v. O'Malley,* No. 3:23-cv-00501-GPC-BGS, 2024 WL 392616, *5 (S.D. Cal. Feb. 1, 2024) ("The ALJ's boilerplate language at the conclusion of its step two analysis that, 'The following residual functional capacity assessment reflects the degree of limitation the undersigned had found in the 'paragraph B' mental functioning analysis' . . .does not satisfy the 'more detailed assessment' required by the regulations."), *citing David Allan G.,* No. 1:21-cv-00162-DKG, 2023 WL 247992, at *2 (D. Idaho Mar. 10, 2023) ("Ultimately, aside from a brief, boilerplate indication that 'any impairment, symptom, or condition not addressed above has not affected the claimant's residual functional capacity,' the ALJ's opinion does not include any discussion or analysis of how Plaintiff's non-severe mental impairments were factored into the RFC determination, and the RFC itself does not contain any nonexertional limitations."); *Delia v. Saul,* No. 1:18-CV-00314-CWD, 2019 WL 4601834, at *7–9 (D. Idaho Sept. 23, 2019) ("The boilerplate language used in the ALJ's decision, without any discussion of Petitioner's mental impairments in the RFC determination, does not satisfy the regulation's requirements."); *Barrera v. Berryhill,* No. CV-17-07096-JEM, 2018 WL 4216693, at *5 (C.D. Cal. Sept. 5, 2018) (reversing the ALJ's decision that "did not say [the ALJ] had considered mild limitations or nonsevere impairments, offering only boilerplate language that she had considered 'all symptoms.' "); *Michele M. v. Saul,* No. 19-cv-00272-JLB, 2020 WL 1450442, at *8 (S.D. Cal. Mar. 25, 2020) (holding that the statement that "the following residual functional capacity assessment reflects the degree of limitation I have found in the 'paragraph B' mental functioning analysis" in the step two analysis section of the decision failed to conclusively indicate that the ALJ had considered the non-severe mental impairments when determining the RFC).

[130] A.R. 1204.  *See* 20 C.F.R. § 416.920a(d)(1), § 416.922.

[131] A.R. 1204, 1209–10.  *See e.g.,* A.R. 526, 558, 565, 578, 607, 636, 642, 651–52, 656, 661, 666, 673, 679, 728, 732, 738, 743, 747, 751, 756, 760.

impairments/functioning.[132]

Plaintiff asserts that the ALJ provided "no legitimate explanation and no rejection of the specific functional limitations offered" by Daniel Gonzales, Ph.D.[133] Dr. Gonzales opined that Plaintiff's ability to understand, remember, and apply information was unimpaired and that his concentration, task persistence, and pacing abilities were unimpaired. He based this on Plaintiff's fully competent ability to manage his finances, as well as the ability to attend to family obligations with his children and his girlfriend's family. Dr. Gonzales also found that Plaintiff's ability to adapt or mange himself was unimpaired, as he had been able to maintain his home competently and manage finances effectively.[134] The ALJ found these opinions persuasive and supported by Plaintiff's mental status examinations.[135]

However, the ALJ discounted Dr. Gonzales's opinion that Plaintiff's ability to socially interact with others was moderately impaired. The ALJ concluded that Plaintiff's visits with his girlfriend's family and visits with his friend in Rhode Island, along with normal mental status examinations, did not support Dr. Gonzales's opinion that Plaintiff demonstrated recurrent patterns of social withdrawal, both in Alaska and in Rhode Island.[136]

Further, the ALJ adopted the opinion of state agency psychological physician, Ron Feigin, M.D., that Plaintiff "would do best in a work environment where he had little to no contact with the general public and only superficial contact with co-workers."[137] She evaluated the April 2017 Compensation and Pension Examination, noting that although the examiner found Plaintiff's mild or transient symptoms decreased his work efficiency and the ability to perform occupational tasks, this decrease only occurred during periods of significant stress and could be controlled by medication.[138] The ALJ also noted that Plaintiff's partner testified that Plaintiff did not participate in mental health treatment during the relevant disability period.[139]

---

[132] A.R. 1209–10.
[133] Docket 9 at 8.
[134] A.R. 721.
[135] A.R. 1210.
[136] A.R. 1210. *See* A.R. 721.
[137] A.R. 1209–10. *See* A.R. 102.
[138] A.R. 1210.
[139] A.R. 1208.

In sum, the ALJ considered all of Plaintiff's mental limitations before electing not to include Dr. Gonzales's opinion that Plaintiff's ability to interact socially was moderately impaired in the RFC. The Court does not find the ALJ's conclusion to be erroneous. The ALJ adequately discussed and evaluated Dr. Gonzales's opinion and included all of Plaintiff's credible mental limitations in the RFC.

## V.     ORDER

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are free from legal error and are supported by substantial evidence. Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 8 is DENIED. The Commissioner's final decision is AFFIRMED. The Court directs the Clerk of Court to enter judgment in favor of Defendant and close this case accordingly.

DATED this 12th of September, 2024, at Anchorage, Alaska.

_____
KYLE F. REARDON
United States Magistrate Judge
District of Alaska